## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **TODD A. KING,** | ) | **CASE NO. 1:22 CV 1372** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE DONALD C. NUGENT** |
| | ) | |
| **v.** | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| **WARDEN FENDER, *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |

*Pro se* Plaintiff Todd A. King filed this action under 42 U.S.C. § 1983 against Lake Erie Correctional Institution Warden Fender, Assistant Warden Ms. King, Unit Manager Padilla, and C.C. Ortiz. In the Complaint, he contends the Defendants harassed him by repeatedly searching his cell, confiscated his property, sprayed him with mace, denied him medical treatment, and failed to inform him of a death in his immediate family. He asserts violations of his Fourth, Fifth and Eight Amendment rights. He does not specify in his Complaint the relief he seeks. He indicates on his Civil Cover Sheet that he is seeking $ 20,000.00 in damages.

### Factual and Procedural Background

Plaintiff alleges his cell was searched on May 18, 2022. He contends Ortiz ordered the block officer to search his cell again on May 19, 2022, knowing that his cell had just been searched the previous night. Plaintiff claims the search was conducted in retaliation for grievances Plaintiff filed against Ortiz's friend which resulted in the termination of the friend's employment. He states that after the block officer completed the cell search, he sent a

communication to the Warden claiming Ortiz was harassing him. He claims Ortiz came back thirty minutes after the block officer completed his search and told him to step out of his cell so that it could be searched for a third time. Plaintiff indicates he refused to leave and asked to speak with a captain. Instead of a captain, Unit Manager Padilla came to his cell and yelled at Plaintiff to leave the area. He repeated his request to see a captain.

Plaintiff alleges he saw Captain Foster walking toward his cell. Plaintiff claims he left his cell and proceeded toward Foster intending to speak with him. He contends Padilla grabbed his wrist to stop him but and he pulled it away from Padilla. He states that Padilla then sprayed mace in his face. He alleges that others also sprayed him with mace but he could not determine their identity because he was temporarily blinded by the chemicals. He claims they took him to a holding cell in the segregation unit and refused to allow him to shower to remove the mace for over two hours. He contends that Foster eventually came into his cell and asked why he had two knives in his shoe. Plaintiff denied possessing any knives.

Plaintiff further contends that his personal property was taken and not returned. It appears that his property was packed up by corrections officers after he was moved to segregation. He claims he was told that some of that property was placed in the captain's vault because it exceeded the amount of property he could have in segregation. He indicates that some of that property was missing when he was transferred. He also contends that property was taken from him during the cell searches. He claims none of the property taken during the searches was in the captain's vault. Plaintiff alleges Assistant Warden Ms. King came into his call and tried to get him to sign a statement that he was on a hunger strike because he could not produce receipts for his property. He states he provided King with an accounting statement that listed his

-2-

financial transactions in the prison but King did not accept that in place of receipts.  He claims

she told him she wanted to get him out of the prison and took pictures of him with her cellular

telephone.  Plaintiff claims Ortiz stole his personal items to retaliate against him.

Finally, Plaintiff alleges that King did not inform him that his mother died and did not

allow him to speak with family members who called to deliver the news to him.  His family

members reported that they spoke to King.  He claims he learned about her death from the

Chaplain at the Warren Correctional Institution after his transfer.

Plaintiff lists his legal claims as violations of his Fourth, Fifth, and Eighth Amendment

rights.  He provides no other description of his claims and does not specify the relief he seeks.

### Standard of Review

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364,

365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the Court is required to

dismiss an *in forma pauperis* action under 28 U.S.C. § 1915(e) if it fails to state a claim upon

which relief can be granted, or if it lacks an arguable basis in law or fact.  *Neitzke v. Williams*,

490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of*

*Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996).  A claim lacks an arguable basis in law or fact

when it is premised on an indisputably meritless legal theory or when the factual contentions are

clearly baseless.  *Neitzke*, 490 U.S. at 327.

A cause of action fails to state a claim upon which relief may be granted when it lacks

"plausibility in the Complaint."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007).  A

pleading must contain a "short and plain statement of the claim showing that the pleader is

entitled to relief."  *Ashcroft v. Iqbal* , 556 U.S. 662, 677-78 (2009).  The factual allegations in the

-3-

pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the Complaint are true. *Twombly*, 550 U.S. at 555. The Plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the Defendant unlawfully harmed me accusation." *Iqbal*, 556 U.S. at 678. A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard. *Id.* In reviewing a Complaint, the Court must construe the pleading in the light most favorable to the Plaintiff. *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir. 1998)

**Discussion**

### Cell Searches and Confiscated Property

Plaintiff first objects to the repeated cell searches and the taking of his personal property. He asserts claims under the Fourth, Fifth and Eighth Amendments. He also asserts that the actions were ordered by Ortiz in retaliation for filing grievances against her friend which resulted in the termination of her friend's employment in the prison. Retaliation claims arise under the First Amendment.

The Fourth Amendment does not provide Plaintiff with a plausible cause of action. The Fourth Amendment prohibition against unreasonable searches and seizures does not apply within the confines of the prison cell. *Hudson v. Palmer*, 468 U.S. 517, 525 (1984). Society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell. *Id.*

Plaintiff also fails to state a claim under the Fifth Amendment. The Fifth Amendment provides that "no person shall be deprived of life, liberty, or property, without due process of

-4-

law." U.S. CONST. amend. V. The Due Process Clause does not prohibit every deprivation by the government of a person's life, liberty or property. *Harris v. City of Akron*, 20 F.3d 1396, 1401 (6th Cir. 1994). It prohibits only those deprivations which are conducted without providing for adequate pre or post deprivation procedures. *Id.* Therefore, before a Plaintiff can claim that he was denied due process, he must plead and prove that state remedies for redressing the wrong are inadequate. In other words, the Plaintiff must attack the state's corrective procedures as well as the substantive wrong. *Jefferson v. Jefferson Cty. Pub. Sch. Sys.*, 360 F.3d 583, 587–88 (6th Cir. 2004). To do this, Plaintiff can either demonstrate that his property was taken as a result of an established state procedure that itself violates due process rights; or he must demonstrate that the Defendants deprived him of property pursuant to a random and unauthorized act and the available state remedies would not be adequate to redress the deprivation. *Macene v. MJW, Inc.*, 951 F.2d 700, 706 (6th Cir 1991); *see Vicory v. Walton*, 721 F.2d 1062, 1064 (6th Cir. 1983).

In this case, Plaintiff does not challenge an established state procedure as a denial of due process. Instead, he claims Ortiz and the block officer took his property through an unauthorized act. He therefore must also allege and demonstrate that his state remedies would be inadequate to redress the situation. A remedy is available in the Ohio Court of Claims. *See Haynes v. Marshall*, 887 F.2d 700, 704 (6th Cir.1989). Plaintiff has not alleged facts suggesting that it would not be adequate to address the deprivation. He fails to state a claim for denial of due process.

In addition, Plaintiff's allegation that his cell was searched repeated to harass him does not rise to the level of an Eighth Amendment claim. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.

-5-

Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). The Eighth Amendment protects inmates by requiring that "prison officials ... ensure that inmates receive adequate food, clothing, shelter, and medical care, and ... 'take reasonable measures to guarantee the safety of the inmates.' " *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). This, however, does not mandate that a prisoner be free from discomfort or inconvenience during his or her incarceration. *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The Eighth Amendment affords the constitutional minimum protection against conditions of confinement which constitute health threats, but does address those conditions which cause the prisoner to feel merely uncomfortable or which cause aggravation or annoyance. *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992) (requiring extreme or grave deprivation). Frequent cell searches alone, while perhaps annoying, do not present a danger to the inmate's health or safety and do not implicate the Eighth Amendment.

The last claim Plaintiff raises with respect to the frequent cell searches and confiscation of property is one for retaliation by Ortiz. Retaliation, though it is not expressly referred to in the Constitution, is actionable because retaliatory actions may tend to chill an individual's exercise of First Amendment rights. *Perry v. Sindermann*, 408 U.S. 593, 597 (1972). To state a *prima facie* case for retaliation prohibited by the First Amendment, Plaintiff must establish: 1) he engaged in protected conduct; 2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and 3) that a causal connection exists between the first two elements. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th

-6-

Cir. 1999). Plaintiff alleges that he filed grievances against Ortiz's friend. Filing a non-frivolous grievance against prison officials is conduct protected by the First Amendment. *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). Plaintiff claims that Ortiz ordered the repetitive cell searches. Frequent cell searches could be sufficient to deter a person of ordinary firmness from filing future grievances. Finally, Plaintiff alleges that Ortiz was motivated to order the cell searches by his filing of grievances against her friend. On the face of the Complaint, Plaintiff alleged sufficient facts to suggest a plausible claim of retaliation against Ortiz that survives summary dismissal.

**Excessive Force**

Plaintiff also includes claims for use of excessive force against Unit Manager Padilla. He contends Padilla grabbed his wrist, sprayed mace in his face and denied him a shower for over two hours to wash the mace from his body. Whenever prison officials are accused of using excessive physical force in violation of the Eighth Amendment, the core determination is whether the force was applied in a good-faith effort to maintain or restore discipline, or whether is was applied maliciously and sadistically to cause harm. *Hudson*, 503 U.S. at 6-7. The Plaintiff is not required to show a serious injury, although the extent of his injuries may be considered in determining whether the use of force was wanton and unnecessary. *Id.* at 7. Other factors include "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.' " *Id.* (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)). Here, assuming the truth of the allegations for purposes of screening,

Plaintiff alleges sufficient facts to state a plausible claim for relief that survives summary dismissal.

**Claims against Warden and Assistant Warden**

Finally, Plaintiff lists Warden Fender and Assistant Warden King as Defendants. His only allegation pertaining to Fender is that he sent a communication to Fender regarding cell searches. He does not state a particular claim against Fender and none is apparent on the face of the Complaint based on this one sentence in the pleading. Similarly, Plaintiff alleges that King attempted to have him sign a statement regarding a hunger strike, refused to accept his trust account statement as property receipts. He again does not identify a cause of action for these actions and none is apparent to the Court.

Plaintiff also alleges that King refused to allow him to speak with family members when his mother died and did not inform him of her passing. While this may be perceived to be insensitive, it does not rise to the level of an Eighth Amendment violation . No other cause of action listed by Plaintiff in his Complaint seems applicable to these actions.

**Conclusion**

Accordingly, Plaintiff's Fourth, and Fifth Amendment claims are dismissed against all Defendants pursuant to 28 U.S.C. §1915(e). His Eighth Amendment claims are dismissed against Fender, King and Ortiz. His First Amendment retaliation claim was asserted only against Ortiz. To the extent Plaintiff intended to assert that claim against Fender, King, or Padilla, he failed to do so and those claims are dismissed. The Court certifies, pursuant to 28 U.S.C. §

-8-

1915(a)(3), that an appeal from this decision could not be taken in good faith.[1]  This action shall proceed solely on Plaintiff's retaliation claim against Ortiz and his Eighth Amendment excessive force claim against Padilla.  The Clerks' Office shall include a copy of this Order with the documents to be served on these two Defendants.

       IT IS SO ORDERED.

                     DONALD C. NUGENT
                     UNITED STATES DISTRICT JUDGE

Dated: November 18, 2022

---

[1]   28 U.S.C. § 1915(a)(3) provides:

       An appeal may not be taken *in forma pauperis* if the trial court certifies that it is not taken in good faith.

-9-